## LIST OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | Lease between Plaintiff and Gulf. |
| Exhibit 2 | July 2, 2003 Letter from Gulf. |
| Exhibit 3 | July 10, 2003 Tanknology Report. |
| Exhibit 4 | August 26, 2003 Letter from Gulf. |
| Exhibit 5 | September 5, 2003 Letter from Gulf. |
| Exhibit 6 | September 23, 2003 letter from Pelletier and Mirza, LLP. |
| Exhibit 7 | November 5, 2003 Letter from Stephen M. Roberts, LLC. |
| Exhibit 8 | Boston Business Journal Article. |

Exhibit 1

Lease between Plaintiff and Gulf.

1

 

# Gulf

## RETAIL MOTOR FUEL OUTLET LEASE

THIS LEASE, made this __30th__ day of __June__, 19 __2001__, by and between CUMBERLAND FARMS, INC., acting through its Gulf Division, having a place of business at 777 Dedham Street, Canton, Massachusetts 02021, hereinafter called "Lessor," and __Ghattas and Joseph, Inc. T/A Norwood Gulf__, occupying the retail motor fuel outlet premises located at __707 Neponset Street, Norwood, MA 02062__, hereinafter called "Lessee."

WITNESSETH:

1. Lessor leases to Lessee the premises located in the __Town__ of __Norwood__ and State of __Massachusetts__, more particularly described as follows:

> 707 Neponset Street
> Norwood, MA 02062
> Facility #118667

together with all rights-of-way, easements, driveways, and pavement, curb and street-front privileges thereunto belonging and together with all the land, buildings, and improvements, hereinafter referred to as "real property," and together with all tangible personal property, hereinafter referred to as "equipment," listed in the attached Equipment Schedule, together with any additions, replacements or substitutions thereto (collectively, "premises"), subject to all easements, rights-of-way and other encumbrances, whether of record or not, previously granted by Lessor or its predecessor in title or interest, and subject to Lessor's right to grant easements, rights-of-way and similar encumbrances to third parties affecting the Lessor's premises without Lessee's consent, on the following terms and conditions:

2. **TERM:** The term of this Lease shall begin at __Noon__ on the __30th__ day of __June__, 19 __2001__, and terminate at noon on the __29th__ day of __June__, __2004__, unless the prior Lessee has not relinquished possession of the premises to Lessor by the above-mentioned beginning date, in which event this Lease shall be null and void and Lessor shall not be liable to Lessee in any manner as a result thereof. It is understood and agreed that any holding over by Lessee at the end of this Lease, or at the end of any extension period, without this Lease having first been renewed or extended in writing, shall not be considered as a renewal or extension of this Lease for any period longer than one month. Lessee may terminate this Lease at any time during any term hereof by giving Lessor ninety (90) days prior written notice of termination. Lessor may terminate or cancel this Lease at any time during the term hereof or nonrenew this Lease at the termination of the term hereof in accordance with the provisions of sections 11 and 12 of this Lease. Concurrently herewith, Lessor and Lessee are entering into a Contract of Sale establishing the terms for sale of petroleum products, which Contract of Sale is incorporated herein and made a part hereof. Lessee agrees, as a covenant of this Lease, that the breach of any of the terms or conditions of the Contract of Sale shall constitute a breach of this Lease, and that termination of the Contract of Sale shall, at the option of Lessor, terminate this Lease.

3. **RENT:** Lessee covenants and agrees to pay to Lessor for the above premises during the term of this Lease rent as follows:

### RENTAL SCHEDULE

1. From __June 30__, 19 __2001__ to __June 29__, 19 __2002__, the rental shall be $ __3,348.00__ per month to be paid to Lessor by Lessee, in advance, on or before the first day of the month for which such rental is due.
2. From __June 30__, 19 __2002__ to __June 29__, 19 __2003__, the rental shall be $ __3,551.00__ per month to be paid to Lessor by Lessee, in advance, on or before the first day of the month for which such rental is due.
3. From __June 30__, 19 __2003__ to __June 29__, __2004__, the rental shall be $ __3,769.00__ per month to be paid to Lessor by Lessee, in advance, on or before the first day of the month for which such rental is due.

Lessor does not presently charge Lessee rent for equipment covered by this Lease (except for any rent that may be charged for that equipment described in the attached Equipment Schedule, incorporated by reference herein and made a part hereof), but reserves the right, at any time during the term of this Lease, to charge Lessee a monthly equipment rental which is reasonably related to Lessor's cost of providing, maintaining, repairing, and replacing all such equipment. Lessor shall provide Lessee a minimum of one hundred twenty (120) days written notice of its intention to initiate a program of rental charges on any or all such equipment. Rent for each month shall be due and received on or before the first (1st) day of each month for which due.

unless Lessor gives Lessee written notice of a different time, schedule or method of payment, including Electronic Funds Transfer, in which event rent shall be payable in accordance with such notice. If the first day of the month, or date otherwise specified for payment, is a Saturday, Sunday, or federal holiday, the date rent is due is the business day immediately preceding such Saturday, Sunday, or federal holiday.

If the rent provided for in the above Rental Schedule is not acceptable to Lessee, and if Lessee, in writing, notifies Lessor within thirty (30) days after receiving this Lease that he wishes to take advantage of Lessor's Rental Review Program, the amount of rent payable under this Lease shall be determined under the following procedure and shall not be limited to the amount specified in the Rental Schedule: within sixty (60) days of receiving this Lease, Lessee shall obtain an appraisal of the premises by a professional real estate appraiser selected from a list provided by Lessor, establishing the then-current fair market value of the premises based upon the highest and best use for the fee interest in said property without regard to the interest owned by Lessor or the existence of this Lease. If Lessee, within the same sixty-day period, elects to submit such appraisal to Lessor, the fair market value of the premises shall be deemed to be the value of Lessee's appraisal, unless the appraisal is unacceptable to Lessor. In the latter event, Lessor shall obtain an appraisal using the same criteria as set forth above. In those cases in which Lessor obtains an appraisal, the fair market value of the premises shall be the average of such two appraisals unless the appraisals differ by more than ten percent (10%) of the higher appraisal, in which event a third appraisal shall be promptly obtained by Lessor from another professional real estate appraiser acceptable to Lessee, whose approval shall not unreasonably be withheld, and the fair market value of the premises shall be deemed to be the average of the three appraisals. The cost of each of the first two appraisals shall be borne by the party who obtains it; the cost of the third appraisal shall be borne equally by the parties. The monthly rental beginning on the effective date specified in the Rental Schedule shall be one twelfth (1/12) of the sum of the following:

    (i)    eleven percent (11%) of the then-current fair market value of the premises; and
    (ii)   the total property taxes paid on the premises in the preceding lease year.

Until the fair market value of the premises has been determined as set forth above, Lessee shall be obliged to pay rent in accordance with the Rental Schedule. After the rent has been redetermined as set forth above, Lessor shall reimburse Lessee for any excess rent paid in accordance with the Rental Schedule, or Lessee shall pay to Lessor any amount by which the rent as determined in this subparagraph exceeds the rent specified in the Rental Schedule.

Lessor reserves the right, at its sole discretion, to reestablish Lessee's rent in the event of any alteration or improvement by Lessor of the premises pursuant to section 5 of this Lease, in accordance with the following formula: one twelfth (1/12) of the sum of: (1) Lessor's evaluation of the fair market value of the improved premises, multiplied by an eleven percent (11%) rate of return; and (2) the total property taxes paid on the premises in the preceding lease year. If the resulting rent is not acceptable to Lessee, Lessee may avail himself of Lessor's Rental Review Program, as described above, provided that Lessee, in writing, notifies Lessor of Lessee's desire to utilize the Rental Review Program within thirty (30) days after the effective date of the proposed rent increase.

**RENTAL SECURITY DEPOSIT** — if you are *newly franchising* your service station from Lessor, you are required to provide Lessor a rental security deposit equal to one month of the first year's rent, prior to the commencement of the term hereof.

With respect to those Lessee dealers who are *renewing their franchise* with Lessor, Lessee is required to provide Lessor a rental security deposit equal to one month of the first year's rent, prior to the commencement of the term hereof. Lessee may request, in writing, at the execution of this franchise agreement, and prior to the commencement of the term hereof, that payment of this rental security deposit be made in four (4) equal monthly installments (in addition to the regular monthly rent) for the first four (4) months of the new term.

    4.   **GENERAL COVENANTS:** Lessee covenants and agrees as follows:

       a. Lessee has examined and is familiar with the conditions of the premises, buildings, equipment, and fixtures located thereon, and acknowledges they are received by Lessee in good order and condition (except as otherwise specified), without warranty by Lessor as to the condition or repair thereof.

       b. Lessee will not permit the premises to be used for any illegal or immoral purpose, or permit waste or nuisance thereon.

       c. The leased premises shall be used for the storage and sale of petroleum products and such other articles as are customarily sold at similar retail motor fuel outlets, and Lessee agrees to maintain adequate supplies of Lessor's petroleum products, and of tires, batteries, accessories, specialties, and other items for sale to the public.

       d. Lessee will not, except on prior written consent of Lessor, (1) paint or repaint the building or any of the structures or fixtures located thereon, (2) make any alterations, additions, or changes to the buildings, structures, fixtures, or equipment, either interior or exterior, (3) install or affix to the buildings, structures, or fixtures or to the walls, doors, or partitions thereof, including the rest rooms, any vending or merchandising device, (4) affix any type of coin-operated lock or device to the door of the rest rooms, or (5) erect or install any additional structures, fixtures, or equipment anywhere on the premises.

       e. Lessee shall maintain adequate records for the control of underground motor fuel inventory, including records reflecting Lessee's daily gauging of tanks, in order to prevent or discover water contamination, and records reflecting Lessee's reconciliation of inventory records with metered sales and product deliveries daily, weekly, and monthly for an indication of possible leakage from tanks or piping, and to notify Lessor immediately of any indication of water contamination or possible leakage from tanks or piping. Lessor, without incurring any obligation to do so, reserves the right to perform such underground inventory reconciliations at the premises as Lessor may deem appropriate. Lessee agrees that Lessor has the right to inspect Lessee's inventory reconciliation records at any time, that Lessee will cooperate fully with Lessor in making these records immediately available for inspection, and that Lessee will fully cooperate and assist Lessor in preventing, investigating, and correcting leakage from storage tanks and piping. Lessee agrees to retain all inventory records for a minimum period of three (3) calendar years preceding the current year or for longer periods as may be required by law.

       f. Lessee recognizes that leaks or releases from storage tanks and dispensing equipment can create environmental, safety and health concerns, as well as impair the value of the leased premises, including real property. Accordingly, Lessee, in addition to the covenants and agreements to control the underground motor fuel inventory under subsection 4(e) of this Lease, covenants and agrees to comply with any and all applicable Federal, State, and local laws, regulations, rules, ordinances, orders, and permits governing the prevention, detection, and notification of leaks and releases from storage tanks and dispensing systems. Lessee also agrees that Lessor has the right to enter the premises

```
                RENT CALCULATION                    06-Feb-01
RE#:            V1295
Facility#:        118667
Address:        707 Neponset Street
                Norwood, MA

Current Policy Rent                    $37,512
Taxes                       -            4,942
                                       -------
                                        32,570
                            ÷              11%
                                       -------
                                       296,091
                            x             107%
Base Value:                            -------
                                       316,817
===============================================================
First Year:
                                       $32,570
                            x             107%
                                       -------
                                       $34,850
Current RE Tax              +            5,327
                                       -------
1st Yr Annual Rent                     $40,177

1st Yr Monthly Rent                     $3,348
===============================================================
Second Year
                                        34,850
                            x             107%
                                       -------
                                        37,289
Current RE Tax              +            5,327
                                       -------
2nd Yr Annual Rent                     $42,616

2nd Yr Monthly Rent                     $3,551
===============================================================
Third Year
                                        37,289
                            x             107%
                                       -------
                                        39,900
Current RE Tax              +            5,327
                                       -------
3rd Yr Annual Rent                     $45,227

3rd Yr Monthly Rent                     $3,769
```

at any time during ordinary business hours to assess whether Lessee is complying with said laws, regulations, rules, ordinances, orders, and permits. In addition, Lessee acknowledges that Lessor has provided Lessee a copy of the "Environmental Reference Guide." Lessee agrees that such document and any revision thereof provided by Lessor shall be part of this Lease. Lessee further agrees to comply with the procedures in such document and any revision thereof.

g. Lessee agrees to pay personal property taxes on Lessee's property and all other taxes, license or permit fees (including but not limited to those required for general business operations and underground petroleum product storage), assessments and charges levied against or necessary for the operation of Lessee's business on the premises, including, without limitation, charges for sewer rent or service, water, telephone, gas, and electric current consumed on the said premises, and any other services that may be furnished to said premises. Lessee shall reimburse Lessor if any charges are collected from or paid by Lessor.

h. Except for ordinary wear and tear and damage caused by unavoidable casualty, Lessee agrees (1) not to cause or permit any damage, loss, or injury to any of the properties and equipment leased herein and to be solely liable and fully reimburse Lessor for the full amount of any damage, and (2) to perform all necessary maintenance and repairs to the buildings, structures, fixtures, and equipment, including, but not limited to, cleaning and maintenance of all oil/water separators, and, where repairs are impractical, to replace the fixtures and equipment, except the storage tanks and dispensing equipment.

i. The equipment leased herein shall be used solely for the storage, handling and advertising of petroleum products purchased by Lessee from Lessor, and any other use of said equipment shall be a breach of this Lease, justifying termination or nonrenewal thereof under sections 11 and 12 below, without liability to Lessor for damages, direct or incidental, resulting from such termination or nonrenewal.

j. Lessee shall make no unlawful or offensive use of the premises; shall comply with all statutes, ordinances, rules, orders, regulations, permits, and requirements of Federal, State, and municipal governments and administrative bodies, including, without limitation, those governing the lead and sulfur content of gasoline, air or water pollution, the disposal of used motor oil and other waste material, the disposal of hazardous wastes, and the posting of required notices on pumps and dispensers of gasoline; and shall forward to Lessor within forty-eight (48) hours of receipt, copies of any and all notices from governmental authorities that may apply to or affect Lessor's leasehold interests or rights as property owner.

k. Lessee shall display no signs or notices on the premises which do not relate to the retail automobile service station business conducted thereon without first obtaining Lessor's written consent, and shall display no signs which do not reasonably conform to design, color, image, and placement guidelines as may be provided by Lessor to Lessee during the term of this Lease.

l. Lessee shall actively and personally participate and devote sufficient time to the personal management of the premises so as to provide for the continued operation and maintenance thereof as a retail motor fuel outlet. The retail motor fuel outlet business shall be Lessee's primary business and shall not be operated on an absentee basis. Lessor shall deem Lessee to be in compliance with this subsection if Lessee arranges for the operation of the retail outlet by a manager, provided that such manager is approved in writing by Lessor, with such approval to be based upon the manager meeting Lessor's then-current dealer selection criteria. Such approval will not be unreasonably withheld. In the event that Lessee is a corporation, Lessee also shall be required to comply with the provisions of the attached Key Person Agreement.

m. Lessee shall quit and surrender peaceably and quietly to Lessor, its agent or attorney, possession of the premises at the expiration or other termination of this Lease without further notice in as good order and condition, ordinary wear and tear and acts of God excepted, as when delivered to Lessee, and not make or suffer any waste thereof, replacing or paying to Lessor the reasonable value of any damage to the premises or equipment caused by negligence of or misuse by Lessee, Lessee's employees, agents, representatives or contractors.

n Lessee shall comply, and instruct his employees to comply, with all applicable Federal, State and local laws, regulations, rules, ordinances, orders, and permits, including, but not limited to, those governing the storage and disposal of used motor oils and other waste materials, the storage and disposal of hazardous wastes, the allowable lead content in motor fuels, the maximum sulfur content of motor fuels, the posting of notices or required information on motor fuel pumps or dispensers, the use and labeling of product containers, and pollution control. Lessee agrees to exonerate, save harmless, protect, and indemnify Lessor from any and all losses, claims, suits, actions, penalties, liabilities and costs arising out of Lessee's failure to comply with this section. Such failure by Lessee to comply also shall entitle Lessor to terminate, cancel, or non-renew this Lease as provided in Sections 11 and 12.

5. **LESSOR'S RIGHT TO MAKE REPAIRS, ALTERATIONS, AND IMPROVEMENTS:** Lessor shall have the right at any time during ordinary business hours to enter the premises and inspect the condition of the premises, buildings, structures, fixtures, and equipment. If after an inspection by Lessor, either with or without notice to Lessee, Lessor determines that maintenance, repairs, or replacements are necessary, Lessor shall have the right to enter the premises and make the repairs; however, this right does not alter in any manner Lessee's duty to maintain, repair, and replace the buildings, structures, fixtures, and equipment. If the maintenance, repair, or replacement was Lessee's responsibility under subsection 4(h)(2), or under other provisions of this Lease, Lessor shall have the right to invoice Lessee for the cost of the maintenance, repair, or replacement, and Lessee shall pay Lessor within twenty (20) days of the date of the invoice.

Lessor also shall have the right at any time during ordinary business hours to enter the premises for the purpose of making alterations or improvements to the premises, including, but not limited to, facelifts, demolition and rebuilding, the removal or installation of canopies, and the conversion of the premises to a convenience store operation.

Lessor shall use its best efforts to minimize interference with Lessee's business, but Lessor shall not be liable to Lessee for any loss of business. Any abatement of rent in connection with repairs, replacements, alterations, or improvements to the premises shall be at Lessor's sole discretion and shall be made a refund to Lessee after payment by Lessee of the contractually required rent.

6. **PRESERVING VALUE OF PREMISES:** Lessee recognizes that the premises have an intrinsic value as a retail motor fuel outlet location and agrees to conduct his business thereon in such manner that the value of the premises as a retail motor fuel outlet will not depreciate. In order to accomplish this purpose, Lessee covenants and agrees that he will furnish such services

and accommodations to retail motor fuel customers as are customarily provided by similar retail motor fuel outlets, including, but not limited to, (1) keeping the premises open for operation not less than from  06:00 a.m.  to  10:00 p.m.  Monday through Saturday and  08:00 a.m.  to  09:00 p.m.  on Sundays; (2) keeping the premises, buildings, equipment, fixtures, rest rooms, sidewalks, approaches, and driveways in good condition, properly lighted, clean, safe, sanitary, and free of trash, rubbish, and other debris; (3) keeping the approaches, driveways, and service areas uncluttered and free of parked vehicles, trailers, and other obstructions, including ice and snow, at all times; (4) rendering appropriate, prompt and efficient service to Lessee's customers, responding expeditiously to all complaints of such customers, making fair adjustments where appropriate, and otherwise conducting Lessee's business in a fair and ethical manner; (5) not engaging in or permitting any improper act or conduct on the premises detrimental to Lessee, Lessor, or any member of the public; and (6) complying with all laws, ordinances, rules or regulations of constituted public authority applicable to the use and occupancy of the premises and the conduct of the relevant retail business.

Lessee recognizes that the presence on the premises of abandoned, wrecked, damaged or junked vehicles, trailers, or part of either, of vehicles or trailers not properly registered or licensed in accordance with applicable law, and of property of any description whatsoever having only a salvage value, renders, within the meaning of this section, the driveways and approaches unsafe, constitutes a nuisance and waste, is detrimental to the intrinsic value of the premises as a retail motor fuel outlet location, and represents failure to comply with the laws, ordinances, rules and regulations of constituted public authority applicable to the use and occupancy of the premises.

Lessee, therefore, agrees and convenants to maintain the leased premises free from the presence of the above-described property at all times, and to remove from the leased premises or any part thereof any and all such property.

7. **PRIMARY BUSINESS:** Lessor expects the primary business conducted on the premises to be the sale of motor fuels. Lessee agrees and understands that Lessor shall have the right to prohibit activity on the premises which would impair that business. Lessor will not object to ancillary activities which Lessee has demonstrated to Lessor's satisfaction will not impair or materially detract from the sale of motor fuel at the premises. Lessee agrees, however, that he will not, without the prior written consent of Lessor, use the premises or any part thereof for the parking, storage, rental or sale of motor vehicles, trailers, equipment or any other activity of a type that might conflict with the effective operation of the premises.

8. **INDEMNITY AND INSURANCE:** Lessor shall insure or self-insure all buildings located at the leased premises and the tangible personal property listed in the attached Equipment Schedule. Lessee assumes the risk of and sole responsibility for, and hereby agrees to indemnify and save harmless Lessor from, any and all costs and claims for injuries, death, loss or damage of any kind or character, to person or property, by whomever suffered or asserted, resulting from or arising out of:

   (a) the condition or use of the leased premises, all buildings, improvements and equipment of Lessee's operation thereon during the terms of this Lease or any renewal or extension thereof, and whether due to any latent or patent defect, except, however, when Lessee shall have given Lessor written notice of the existence of a defective condition for the repair of which Lessor is responsible under this Lease and shall have taken all reasonable precautions to prevent the occurrence of any injuries, death, loss and damage attributable solely and directly to such defective condition;
   (b) the negligence or misconduct of Lessee, its agents, servants or employees, whether occurring on or off the premises, or of any other person entering upon the premises under the express or implied invitation of Lessee;
   (c) the failure by Lessee, its agents, servants or employees, to comply with any provision of this Lease; or
   (d) the failure by Lessee to either maintain or reconcile adequate records for the detection of water contamination or possible leaks in tanks or piping or to notify Lessor immediately of any indication of such contamination or leaks.

Lessee shall obtain and maintain at his sole cost, throughout the term of this Lease, insurance as described below:

   (a) Worker's Compensation & Employer's Liability, including Occupational Disease, for states where work is being conducted, operations are performed and where exposures may exist, in accordance with state laws and regulations with limits of coverage not less than the following:

   | Coverage | Limits |
   | --- | --- |
   | Worker's Compensation | Statutory |
   | Employer's Liability | $100,000 each accident |
   | | $100,000 disease, each employee |
   | | $100,000 disease, policy limit |

   (b) Commercial General Liability or Garage Liability, covering all aspects of Lessee's garage operations and on an "occurrence" basis with limits of coverage not less than the following:

   | Coverage | Limits |
   | --- | --- |
   | Commercial General Liability | $500,000 per occurrence **or** |
   | Garage Liability | $500,000 per occurrence |

   (c) Property insurance with limits sufficient to cover all contents of the leased premises except tangible personal property listed in the attached Equipment Schedule on an "all risk" basis.
   (d) Automobile Liability Insurance on an "occurrence" basis covering owned, non-owned and hired vehicles used in Lessee's business and Garagekeeper's Legal Liability (including fire, explosion, theft, riot, civil commotion, vandalism, malicious mischief and collision) with limits of coverage not less than the following:

   | Coverage | Limits |
   | --- | --- |
   | Automobile Liability | $500,000 Combined Single Limit |
   | Garagekeeper's Legal Liability | $50,000 per occurrence |

   (e) Environmental Impairment Liability Insurance covering all operations, on or off the premises, in amounts determined by Lessor or in accordance with applicable laws or regulations.

Certificates of Insurance evidencing compliance with the above requirements shall be delivered to Lessor prior to the effective date of this Lease and shall identify Lessor as an additional insured with respect to General Liability or Garage Liability. This should be verified by endorsement. Lessee agrees to add a waiver of subrogation for the above coverage in favor of the Lessor. Any changes reducing coverage or cancellation of any of the policies shall be provided to the Lessor at least thirty (30) days prior to the effective date of such change or cancellation. If Lessee does not comply with the above specifications within

ninety (90) days of the effective date of the Lease, Lessor will purchase insurance for Lessee adding this premium to their Lease payments.

Lessee agrees to waive all rights, remedies, and claims that it is entitled by law to pursue against Lessor which relate to Lessor's maintenance of, or repairs to, the buildings, structures, fixtures, equipment, and tools located on the leased premises.

9. **PERSONAL GUARANTY:** If Lessee is a corporation, all shareholders of Lessee shall sign personal guarantees in a form acceptable to Lessor.

10. **ASSIGNABILITY:** Except as specifically provided by law or by this Lease, Lessee shall not have the right to assign or encumber Lessee's interest in this Lease or in the premises, or sublease all or any part of the premises, without Lessor's prior written consent, which consent will not be unreasonably withheld. Without limitation, each of the following acts shall be considered an assignment:

   (a) Transfer of this Lease either by will or by operation of law upon the death of Lessee, unless such transfer satisfies the conditions of Lessor's Dealer Bequeathment Program as specified in the attached Rider Agreement.
   (b) Lessee's bankruptcy, insolvency, or assignment for the benefit of creditors.
   (c) Attachments or any other legal proceeding levied or instituted against the premises by anyone other than Lessor, if not removed within ten (10) days.
   (d) The appointment of a receiver with authority to take possession of the premises.
   (e) If Lessee is a corporation, any sale or transfer of stock.

Lessee shall not assign this Lease or any interest therein to a third party prior to having offered an assignable right of first refusal to Lessor in writing. Lessor shall have thirty (30) business days within which to exercise said right of first refusal. If Lessor does not exercise said right of first refusal, and for any reason Lessee shall not thereafter sell such interest to the party or parties making said offer on the terms of said offer, Lessor's prior assignable right to purchase Lessee's interest shall apply to any new offer to purchase the same. If Lessor does not exercise said right of first refusal, and Lessee thereafter sells its interest herein to a third party, Lessee shall provide Lessor, within ten (10) calendar days after the closing date of the sales transaction, documentation suitable to Lessor which verifies the terms of the transaction. The existence, exercise or non-exercise of Lessor's assignable right of first refusal shall not operate to restrict Lessor's right to disapprove or withhold consent to the assignment or sale of Lessee's interest.

It is understood and agreed that Lessor shall have the right to sell or assign its right, title, or interest, in whole or in part, in the premises.

If this Lease has been assigned by Lessee pursuant to this section, the assignee shall become the "Lessee" under this Lease. During any assignment period, the Lessee-assignor shall remain fully liable for the performance of the terms of this Lease. If this Lease has been assigned by Lessor pursuant to this section, the assignee shall become the "Lessor" under this Lease.

11. **GROUNDS FOR TERMINATION AND NONRENEWAL:** The obligations and covenants of Lessee set forth in this Lease are conditions which are both reasonable and of material significance. Lessor may, at its option, terminate, cancel, or nonrenew this Lease after notice to Lessee as required by law for any one or more of the following grounds, or for any other ground permitted by law:

   (a) Failure by Lessee to comply with any provision of this Lease, which provision is both reasonable and of material significance to the relationship created by this Lease;
   (b) Failure by Lessee to exert good faith efforts to carry out the provisions of this Lease;
   (c) Occurrence of an event which is relevant to the relationship created by this Lease, and as a result of which termination, cancellation, or nonrenewal of this Lease is reasonable, including, but not limited to, events such as:
       (1) Fraud or criminal misconduct by Lessee relevant to the operation of the premises.
       (2) Declaration of bankruptcy or judicial determination of insolvency of Lessee.
       (3) Continuing severe physical or mental disability of Lessee of at least three (3) months' duration which renders Lessee unable to provide for the continued proper operation of the premises.
       (4) Loss of Lessor's right to grant possession of the premises through the expiration of an underlying lease.
       (5) Condemnation or other taking of the premises, in whole or in part, pursuant to the power of eminent domain.
       (6) Loss of Lessor's right to grant the use of the trademark.
       (7) Destruction (other than by Lessor) of all or a substantial part of the premises.
       (8) Failure by Lessee to pay Lessor in a timely manner when due rent and all other sums to which Lessor is legally entitled.
       (9) Failure by Lessee to operate the premises for seven (7) consecutive days or such lesser period which under the facts and circumstances constitutes an unreasonable period of time.
       (10) Willful adulteration, mislabelling, or misbranding of Lessor's motor fuels or other trademark violations by Lessee.
       (11) Knowing failure of Lessee to comply with Federal, State, or local laws or regulations relevant to the operation of the premises.
       (12) Conviction of Lessee of any felony involving moral turpitude.
       (13) Death of Lessee.
       (14) The occurrence of leaks from storage tanks and dispensing equipment and a determination by Lessor not to repair or replace the underground storage equipment, but to convert the property to other uses not including the marketing of petroleum products or to sell the property.
       (15) Any other acts or omissions of Lessee which are relevant to the relationship created by this Lease.

12. **ADDITIONAL GROUNDS FOR NONRENEWAL:** In addition to the grounds for termination, cancellation, and nonrenewal of this Lease provided in section 11, Lessor may, at its option, nonrenew this Lease at the expiration of the term hereof, after notice to Lessee as required by law, for any one or more of the following grounds, or any other ground permitted by law:

   (a) The receipt of numerous bona fide customer complaints by Lessor concerning Lessee's operation of the premises;

(b) The receipt of numerous bona fide customer complaints by Lessor concerning the conditions of the premises or the conduct of any employee of Lessee, if Lessee fails to promptly take action to cure or correct the basis of such complaints;

(c) The failure by Lessee to operate the premises in a clean, safe, and healthful manner.

13. **LESSOR'S RIGHT TO RESUME POSSESSION OF PREMISES:** Upon termination, cancellation, or nonrenewal of this Lease, Lessor may re-enter and in any lawful manner resume possession of said premises, operate them through employees, agents, or lessees, and Lessee hereby waives any claim against Lessor and the benefit of all statutory rights inconsistent herewith. In the event of such re-entry, Lessor may buy for its own account, or sell or store for the account of Lessee, any personal property and stock of Lessee then on the premises, and Lessee hereby appoints Lessor his agent for that purpose, and Lessor shall not be liable to Lessee in damages or otherwise for any act or omission of Lessor in regard thereto. Lessor may retain out of the proceeds of any sale any sums owing Lessor by Lessee, whether under this Lease or otherwise (without releasing Lessee from any indebtedness except as to the amount so retained), and Lessor may at its discretion pay out of the proceeds or otherwise any taxes or contributions owed by Lessee which in the absence of payment would or might reasonably under applicable laws or regulations be an obligation of Lessee's successors or Lessor. Lessor may discharge any liens upon the goods, and Lessee shall reimburse Lessor for any payments in excess of the value of the goods.

14. **LANDLORD-TENANT REMEDIES PRESERVED:** In addition to the right to re-enter and repossess the premises, Lessor shall be entitled to all the remedies incident to the relation of landlord and tenant, and to the extent permitted by law, Lessee hereby empowers any attorney of any court of record to appear for him and confess judgment in ejectment, unlawful detainer, or other applicable form of legal action, with right of immediate writ of possession.

15. **SUBORDINATION TO MORTGAGES AND DEEDS OF TRUST:** This Lease is subject and subordinated to all present and future mortgages, deeds of trust and other encumbrances affecting the demised premises or the property of which said premises are a part. Lessee agrees to execute, at no expense to Lessor, any instrument which may be deemed necessary or desirable by Lessor to further effect the subordination of this Lease to any such mortgage, deed of trust or encumbrance.

16. **LESSEE'S BUSINESS:** It is understood that Lessee operates an independent business. Nothing in this Lease shall be construed as reserving or granting to Lessor the right to exercise any control over Lessee's business or the manner in which the same shall be conducted; but the control and direction of such business and operations shall be and remain in Lessee, subject only to Lessee's performance of the obligations of this Lease. Lessee agrees to display conspicuously on the premises such signs as Lessor may provide to Lessee for the purposes of communicating to Lessee's customers that Lessee is an independent businessman. Lessor shall not be liable to Lessee or Lessee's employees, agents, patrons or invites, or to any person whomsoever, for any injury to person or damage to property caused by the negligence or misconduct of Lessee, its agents, servants or employees, or of any other person entering upon the premises under the express or implied invitation of Lessee.

17. **UNDERLYING ESTATES:** This paragraph will apply if Lessor is not the owner of the leases premises. Lessee has been notified in writing prior to the commencement of the terms of this Lease:

(a) that Lessor is not the owner of the premises herein leased but holds the premises under a lease which: (1) expires on N/A _____, (2) may be cancelled by owner upon ____N/A____ (days, months) notice to Lessor, and (3) might be extended to expire _____N/A_____ or _____N/A_____; and

(b) that such underlying lease might expire and not be renewed or extended beyond its expiration date. It is understood and agreed that this Lease and the estate created hereby are subject to all the terms, provisions, and conditions of such underlying lease and that if such underlying lease (or any extension or renewal thereof) expires or is terminated for any reason prior to or coincidental with the end of the term of this Lease and is not extended or renewed, then, and in that event, this Lease shall terminate (without any liability on the part of Lessor) upon the date such underlying lease (or any extension or renewal thereof) expires or is terminated. Lessor is cognizant of and agrees to comply with its obligations under 15 U.S.C. Sec. 2802 (c) (4), as amended. Lessor shall be under no obligation to seek an extension or renewal of such underlying lease or to exercise any extension or renewal rights Lessor has or may have under such underlying lease. To the extent reasonably necessary to determine Lessor's rental obligation under such underlying lease, Lessee agrees to permit Lessor to inspect Lessee's business records.

18. **CONDEMNATION:** If the leased premises or any part thereof shall be condemned or taken for any public purpose, or if Lessor agrees to execute a voluntary conveyance in lieu of condemnation, Lessor may forthwith terminate this Lease by written notice to Lessee, and Lessee shall not be entitled to any damage award, including, but not limited to, awards for loss of good will or business value, or purchase price, or any part of either, which may be paid on account of such condemnation or sale.

19. **REIMBURSEMENT OF LESSOR'S COSTS:** Lessee shall reimburse Lessor for all reasonable costs (including all attorneys' fees) that Lessor incurs in enforcing its rights and remedies under this Lease.

20. **NOTICES:** All notices under this Lease must be in writing and may be delivered personally or sent by registered or certified mail, return receipt requested, and shall be deemed duly given if and when deposited in the United States mail, properly stamped and addressed to Lessor or Lessee, as the case may be, at his or its address shown above or to such other address as either party may hereafter designate in writing to the other party, or upon receipt when delivered personally.

21. **ACCORD:** The parties to this Lease have reviewed the provisions herein and find them fair and mutually satisfactory, and further agree that in all respects the provisions are reasonable and of material significance to the relationship of the parties hereunder, and that any breach of a provision by either party hereto or a failure to carry out same in good faith shall conclusively be deemed to be substantial.

22. **HEADINGS:** The headings of the sections of this Lease are for convenience only and do not in any way limit, amplify or otherwise affect the rights, obligations and agreements contained in this instrument.

23. **ENTIRE AGREEMENT:** This Lease contains the entire agreement between the parties relating to the subject matter hereof, and no agent or employee of Lessor has authority to change, modify, or add to this Lease, or to make any other or further agreements in connection therewith, except in writing signed by an authorized manager of Lessor. The right of Lessor to insist upon the strict performance of the terms of this Lease shall not be affected by any waiver, forebearance, or previous course of dealing.

24. **COMPLIANCE WITH LAWS; SEVERABILITY OF PROVISIONS:** Lessor and Lessee agree that it is not the intention of either party to violate statutory or common law, and that if any section, sentence, clause or combination herein is in violation of any law, such section, sentence, clause, or combination herein shall be inoperative and the remainder of this Lease will remain binding upon the parties hereto, unless in the judgment of either party, the remaining portions of this Lease are inadequate to define properly the rights and obligations of the parties, in which event such party shall have the right, upon making such determination, to terminate this Lease.

25. **SIGNATURE BY AUTHORIZED MANAGER:** It is agreed that this Lease shall not become binding upon Lessor until signed by an authorized manager thereof.

LESSOR

By: _____

Title: _____

Witness: _____

LESSEE

By: _____

Title: _____

Witness: _____

01/95 Lease

7 of 7

  

# EQUIPMENT SCHEDULE

| PUMPS | | | | LUBSTERS | |
|---|---|---|---|---|---|
| NO. | MAKE | MODEL | | NO. | CAPACITY |
| 4 | Elec R/C Disp Dual | Gen Noss MPD | | | |
| 4 | Submerged | 1 dual diesl | | | |
| 1 | Elec R/C Disp Single | | | **AIR STANDS** | |
| 4 | Leak Detectors | | | NO. | MAKE |
| | | | | | |
| | | | | | |
| **UNDERGROUND TANKS** | | | | | |
| NO. | CAPACITY | | | **SIGNS** | |
| 4 | 9,816 Gal. SW Fiberglass | | | NO. | TYPE |
| 1 | 550 Gal. SW Fiberglass | | | 1 | Sign Cradle |
| | | | | 2 | Single Face Wall Mount Gulf ID |
| | | | | 1 | 6' Internally Lit Gulf ID |
| | | | | 1 | Sign Pole |
| **LIFTS** | | | | | |
| NO. | MAKE | TYPE | MODEL NO. | **OTHER EQUIPMENT** | |
| 2 | | Frame Contact | | 7 | Area Lights |
| | | | | 5 | Light Poles |
| | | | | 2 | Tire Racks Fixed to Building |
| **AIR COMPRESSOR** | | | | 1 | Salesroom Equipment |
| NO. | MAKE | | HORSE POWER | 1 | Gulfex Display Background |
| 1 | Complete | | 1½ HP & Up | 1 | Permanent Pump Island Oil Cabinet |
| | | | | 4 | Dualite Illuminated Price Sign |

Facility #118667
Norwood, MA 02062

Lessee may use Lessor's trademarks, brand names, and color schemes to identify and advertise Lessor's branded products at Lessee's location in connection with any of the scheduled equipment; however, Lessee shall not sell under Lessor's identification, trademarks, or brand names any product not bearing the Lessor's brand or any mixture or adulteration of any of Lessor's branded products with each other or with any other product or material. Upon request, Lessor shall have the right to enter the leased premises for the purpose of taking and recording the volume meter readings on any of the scheduled equipment through which Lessor's branded products are dispensed.

ADDITIONAL EQUIPMENT RENTAL:

Except for and in consideration of the furnishing by Lessor to Lessee of additional equipment listed herein, Lessee agrees to pay to Lessor additional rental, as specified below, for the following items:



The rental is to be paid and collected in the same manner as specified in section 3 of the Retail Motor Fuel Outlet Lease and is otherwise subject to all the terms and provisions of section 3; and the additional equipment is in all other respects subject to the terms and conditions of said Lease.

LESSOR

By: _____

Title: _____

Witness: _____

LESSEE

By: _____

Title: _____

Witness: _____

Date: 3/1/01

01-95 ES

**Exhibit 2**

July 2, 2003 Letter from Gulf.

2

**Gulf**
777 DEDHAM STREET
CANTON, MASSACHUSETTS 02021

July 2, 2003

Mr. Ghattas Ajjouri
C/O Norwood Gulf
707 Neponset Street
Norwood, MA 02062

Re:   **FAILURE TO REPORT/CORRECT DEFECTS IN STAGE II
      VAPOR RECOVERY EQUIPMENT**
      Facility # 118667    Account # 8005892

Dear Mr. Ajjouri:

Please refer to the Retail Motor Fuel Outlet Lease and Dealer Contract of Sale between you and the Gulf Division of Cumberland Farms, Inc. ("Gulf") dated and effective June 30, 2001 and the Environmental Reference Guide previously provided to you by Gulf.

On July 1, 2003 your Retail Marketing Representative, Jason Florio, visited the service station you lease from Gulf at 707 Neponset Street, Norwood, MA, for the purpose of, among other items, inspecting the Stage II vapor recovery equipment. Mr. Florio discovered the following defects with the Stage II equipment:

1)   Stage II Vapor recovery checklist not filled out correctly everyday is marked okay
2)   Nozzles on pumps need to be replaced. Tankology findings on 6/24/03

Your failure to report and/or correct these defects is a direct violation of your franchise agreements with Gulf (paragraph 4f and 4n of your Retail Motor Fuel Outlet lease and section IV of the Environmental Reference Guide). Continued failure to properly inspect, report or correct any and all defects in the Stage II vapor recovery equipment may subject your franchise to termination or nonrenewal pursuant to the provisions of the Petroleum Marketing Practices Act, as amended, 15 U.S.C., Secs. 2802 (b) (2) (A), (b) (2) (B) and (b) (2) (C) as further detailed under (c) (11).

Please contact Mr. Florio within ten (10) days of this letter to review this matter and ensure that you will immediately comply with this important franchise provision.



THE GULF DIVISION OF
CUMBERLAND FARMS, INC.

# Gulf

777 DEDHAM STREET
CANTON, MASSACHUSETTS 02021

Mr. Ghattas Ajjouri
July 2, 2003
Page 2

Attached is a true and correct copy of the official Revised Summary to Title I of the Petroleum Marketing Practices Act, as published in the Federal Register, Vol. 61 No. 123.

I certify that this is being sent by Certified Mail, Return Receipt Requested, Mail # 7000 1670 0005 2077 3629, and Regular Mail.

Very truly yours,

Thomas S. Bialek
General Manager, Northeast Region
The Gulf Division of Cumberland Farms, Inc.

attachment

cc:   T.J. Brooks *(without attachment)*
      G.P. Haseotes *(without attachment)*
      M.G. Howard, Esq. -- Corporate General Counsel *(without attachment)*
      R. Mals *(via facsimile, without attachment)*
      E.C. Tayeh, P.E. *(without attachment)*
      Providence Maintenance *(without attachment)*



# Exhibit 3

July 10, 2003 Tanknology Report.



8900 Shoal Creek Blvd, Building 200
Austin, Texas  78757
Phone:  (512) 451-6334
Fax:  (512) 459-1459

GULF #118667
707 NEPONSET STREET
NORWOOD, MA. 02062

Service Date: 07/07/2003
Order Number: 7152262

Date Printed and Mailed: 07/10/2003

Dear Dealer,

Enclosed are the results of recent services completed at your station. Please put these results in your compliance file as they need to be retained at the site address.

Services performed:

    Stage II blockage tests
    Stage II pressure decay tests

Sincerely,

*Dawn Kohlmeyer*

Dawn Kohlmeyer
Manager, Field Reporting

# CERTIFICATE OF STAGE II VAPOR RECOVERY TESTING

**Tanknology**

8900 SHOAL CREEK, BUILDING 200
AUSTIN, TEXAS 78757
(512) 451-6334
FAX (512) 459-1459

TEST DATE: 07/07/03

WORK ORDER NUMBER: 7152262

CLIENT: CUMBERLAND FARMS
777 DEDHAM STREET
CANTON, MA 02021

SITE: GULF #118667
707 NEPONSET STREET
NORWOOD, MA 02062

ATTN: RICHIE ETZOLD

CONTACT: MANAGER

| PRODUCT | NOZZLE | DISPENSER | DYNAMIC BACK PRESSURE (DRY PRESSURE) inches of water at flow rates: | | | | | | VAPOR BLOCKAGE TEST (WET PRESSURE) inches of water at flow rates: | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 20 cfh | 40 cfh | 60 cfh | 80 cfh | 100 cfh | Pass/fail | 20 cfh | 40 cfh | 60 cfh | 80 cfh | 100 cfh | Pass/fail |
| GASOLINE | emco/ husky | 1-2 | | 0.06 | 0.12 | 0.18 | 0.24 | PASS | | 0.06 | 0.12 | 0.18 | 0.26 | PASS |
| GASOLINE | emco/ husky | 3-4 | | 0.05 | 0.10 | 0.18 | 0.28 | PASS | | 0.08 | 0.15 | 0.23 | 0.40 | PASS |

## PRESSURE DECAY TEST

| TANK # | Init Press | 1 min | 2 min | 3 min | 4 min | 5 min | Allowable decay | Ullage space | Result | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|
| slave 1 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 9.66 | 12852 | PASS | |

Tanknology appreciates the opportunity to serve you, and looks forward to working with you in the future. Please call any time, day or night, when you need us.

Tanknology representative:
DOUG QUIRK

Test conducted by:
JESS FUTTERLEIB

Reviewed:

Technician Certification Number: 995