UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. _____

GHATTAS AND JOSEPH, INC., )
    - Plaintiff, )
    )
v. )
    )
CUMBERLAND FARMS, INC., )
By and through Its )
GULF DIVISION, )
    - Defendant, )

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff, GHATTAS AND JOSEPH, INC. (hereinafter "Plaintiff") files this Memorandum of Law in Support of its Motion For Temporary Restraining Order and Preliminary Injunction against Defendant, CUMBERLAND FARMS, INC., acting through its Gulf Division (hereinafter "Gulf") and in support thereof, states and submits as follows:

### I. STATEMENT OF THE CASE AND RELIEF REQUESTED.

**A. NATURE OF CONTROVERSY.**

This is an action for declaratory and injunctive relief and damages pursuant to, *inter alia*, the Petroleum Marketing Practices Act, Title 15 U.S.C. §2801 et. seq. (the "PMPA"), seeking, among other things, that this Court enter a Temporary Restraining Order and Preliminary Injunction (i) prohibiting Defendant Gulf from terminating

1

the franchise relationship on or about December 14, 2003 pending this Court's determination of the issues at hand; and (ii) allowing Plaintiff to remain in business and conduct business at the location; (iii) ordering Defendant to reinstate credit terms for Plaintiff, and (iv) prohibiting Gulf from interfering with the Plaintiff's business operation at the Franchise location.

B.   **Jurisdiction**.

This Court has jurisdiction pursuant to 15 U.S.C. §2805 which provides, in pertinent part, as follows:

> "If a franchisor fails to comply with the requirements of [15 U.S.C. §2802 or §2803], the franchisee may maintain a civil action against the franchisor. Such action may be brought, without regard to the amount of controversy, in the District Court of the United States in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business…"

Plaintiff is doing business at 707 Neponset Street, Norwood, Norfolk County, Massachusetts which is in this Court's judicial district, and jurisdiction is therefore proper in this Court.

C.   **Underlying Facts**.

1.   Unless otherwise indicated, the underlying facts are attested to in the Affidavit of Ghattas Ajjouri being concurrently filed in support of the Motion for Temporary Restraining Order and for Preliminary Injunction.

2. Plaintiff has been in a franchise relationship with Gulf for approximately ten (10) years.

3. On or about June 30, 2001, Cumberland Farms Inc., acting through its Gulf Division entered into a certain Retail Motor Fuel Outlet Lease with Ghattas and Joseph, Inc. (hereinafter referred to as "Lease") covering the business and premises located at 707 Neponset Street, Norwood, MA (hereinafter the "Premises").

4. The Plaintiff also entered into other agreements with Gulf including, without limitation, a certain Dealer Contract of Sale, a Key Person Agreement, an Electronic Point of Sale Terminal Rental Agreement. In addition, Ghattas Ajjouri and Ibrahim Ajjouri were also required to sign personal guaranties.

5. The Plaintiff is a "franchisee" pursuant to agreements executed with Gulf and pursuant to the PMPA.

6. The current term of Gulf's lease with the Plaintiff will end on June 29, 2004.

7. On or about July 2, 2003, Gulf sent correspondence to Plaintiff stating that Gulf's marketing representative, Jason Florio ("Florio"), had visited the Premises and discovered defects in Stage II Vapor Recovery Equipment. Specifically, Florio alleged that (1) "Stage II Vapor recovery checklist not filled out correctly everyday is

marked okay" and (2) "Nozzles on pumps need to be replaced. Tankology findings on 6/24/03".

8. On or about July 7, 2003, Gulf, through Tanknology, its agent, contractor or representative, performed Stage II vapor testing.

9. On or about July, 2003, the Plaintiff's was informed that it's equipment passed said testing and that it's equipment was in compliance.

10. On or about August 22, 2003, <u>nearly two months later</u>, Florio again entered the Premises for a purported inspection.

11. By letter dated August 26, 2003, Gulf alleged that Florio discovered defects with Stage II equipment. Specifically, "Hoses were taped with electrical tape to cover severe rips."

12. The letter dated August 26, 2003 did not mention, refer or specify any failure to produce daily statistical inventory.

13. The letter dated August 26, 2003 did not contain or allege, with any particularity or specificity, whether the purported noncompliance existed with the same hoses, the prior equipment or subsequently installed equipment.

4

14. On or about September 5, 2003, Gulf purportedly sent notice of Franchise Termination to the Plaintiff. Said Notice of Termination provided, in pertinent part,

(a) that Gulf had previously notified Plaintiff by letters dated July 2, 2003 and August 26, 2003 of failure to comply with certain Retail Motor Fuel Outlet Lease dated June 30, 2001;
(b) that the franchise was being terminated pursuant to §2802(b)(2)(A) and §2802 (b)(2)(B) of the PMPA;
(c) that the franchise would be terminated on December 14, 2003; and
(d) that,

"[s]pecifically, there has been:
(1) A failure to comply with a reasonable franchise provision which is of material significance to the franchise relationship- the portion of the Retail Motor Fuel Outlet Lease wherein you agreed to:
  (a)".... Lessee in addition to the covenants and agreements to control the underground motor fuel inventory under section 4(e) of this lease, covenants and agrees to comely with any and all applicable Federal, State and local laws, regulations, rules, ordinances, orders and permits governing the preventions, detection, and notification of leaks and releases from storage tanks and dispensing systems…
(2) A failure to exert good faith efforts to carry out the provisions of the franchise.

15. On September 23, 2003, Plaintiff, through counsel, notified Gulf that Plaintiff had taken previously taken the necessary and proper steps to remedy the alleged breach, including, the purchase and installation of new hoses.

16. On November 5, 2003, Plaintiff, through counsel, further notified Gulf that Plaintiff (1) was not in

5

violation of any franchise agreements; (2) was in compliance with applicable federal and state environmental laws; and (3) believed Gulf's action actions were improper and motivated by pecuniary interests.

17. Specifically, Plaintiff is of the opinion that Gulf is taking actions, in violation of PMPA, to reacquire franchises and sell same to reduce corporate debt.

18. By letter dated November 13, 2003, Gulf reiterated its position that (1) its numerous and repeated inspections were aimed at protecting the environment and (2) that Plaintiff vacate the Premises on December 14, 2003.

19. Despite repeated request by Plaintiff, Gulf has refused to withdraw or revoke its notice of Franchise termination.

20. Further, the Plaintiff's officers, directors and shareholders may be liable for potential damages as they were required to execute individual guaranties.

21. As a result thereof, Plaintiff had no choice but to institute action against Gulf and request injunctive relief. An injunction is necessary to protect Plaintiff while the Court determines and adjudicates the merits of this action. Without an injunction, Gulf will be able to terminate the franchise relationship, lease the premises to a third party, sell the Premises, remove necessary

equipment, including gasoline dispensers and tanks, close the station altogether and destroy the business created by Plaintiff. If the Premises are relet, sold or closed, the Plaintiff would be out of business. Accordingly, Plaintiff is in need of a Temporary Restraining Order and Preliminary Injunction.

D.  **Applicable Law.**

The PMPA governs this action. The PMPA governs franchise arrangements for the sale, consignment, or distribution of motor fuel. Congress enacted the PMPA "primarily to protect motor fuel franchisees by leveling the playing field between them and their franchisors (typically, large oil companies)" *C.K. Smith & Co., Inc., v. Motiva Enterprises, LLC*, 269 F.3rd 70, 73 (1st Cir. 2001) citing *Four Corners Serv. Station, Inc. v. Mobil Oil Corp.*, 51 F.3rd 306, 310 (1st Cir. 1995) and *Veracka v. Shell Oil Co.*, 655 F.2d 445, 448 (1st Cir. 1981). In order to prevent unlawful terminations of franchise agreements, the PMPA imposes two requirements on the franchisor. First the franchisor may terminate a franchise only for certain statutorily prescribed grounds. Second, the franchisee must be given adequate notice of the franchisor's intent to terminate the franchise. *Sun Refining Marketing. Co. v. Rago*, 741 F.2d 670, 672 (3rd Cir. 1984).

7

The PMPA is directed at protecting the buildup of goodwill by those individuals who have invested time and money into the operation of a franchise, preventing appropriation of hard earned goodwill which occurs when a franchisor arbitrarily terminates or takes over a franchise. *Brewer v. Exxon Corp.*, 626 F.Supp. 76 (E.D. Tenn. 1985). Its primary purpose is to protect franchisees from arbitrary or discriminatory terminations and non-renewals. *Smith & Co., Inc., v. Motiva Enterprises, LLC*, 269 F.3rd 70, 73 (1st Cir. 2001) See also, *Mobil Oil Corp. v. Virginia Gasoline Marketers and Automotive Repairs Association, Inc.*, 34 F.3rd 220 (4th Cir. 1994).

The PMPA provides standards and procedures that a franchisor, such as Gulf, must follow when terminating or non-renewing a franchise. *Seckler v. Star Enterprise*, 124 F.3rd 1399 (11th Cir. 1997). The right of a gasoline franchisor to terminate or refuse to renew a franchise agreement is strictly regulated and restricted by the PMPA. *Id.*

The grounds for termination and non-renewal under the PMPA are specifically delineated and described in Title 15 §2802(b)(2) which provides:

> For purposes of this subsection, the following are grounds for termination or nonrenewal of a franchise relationship:

8

>    (A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, if the franchisor first acquired actual or constructive knowledge of such failure-
>    >    (i) not more than 120 days prior to the date on which notification or termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or
>    >    (ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title.
>    (B) A failure of the franchisee to exert good faith efforts to carry out the provisions of the franchise, if-
>    >    (i) the franchisee was apprised by the franchisor in writing of such failure and was afforded a reasonable opportunity to exert good faith efforts to carry out such provisions; and
>    >    (ii) such failure thereafter continued within the period which began not more than 180 days before the date notification of termination or nonrenewal was given pursuant to section 2804 of this title.

15 U.S.C. §2802(b)(2).

The PMPA also includes a definition of the term "failure". Specifically,

>    the "term "failure" does not include-
>    (A) any failure which is only technical or unimportant to the franchise relationship
>    (B) any failure for a cause beyond the reasonable control of the franchisee; or
>    (C) any failure based on a provision of the franchise which is illegal or unenforceable under the law of any State (or subdivision thereof).

15 U.S.C. §2801(13).

9

Recently, in the case of *Chevron, U.S.A., Inc. v. James E. Lutz*, 2003 WL 21686412 (N.D. CA 2003), (a copy of the said Memorandum is attached hereto for reference) the United States District Court for the Northern District of California, by Memorandum and Order dated July 10, 2003, also found that the PMPA defines "failure" so as not to include any failure that is only technical or unimportant to the franchise relationship. An unknowing failure to comply with federal, state, or local laws is not grounds for termination under the PMPA. In the Lutz case, the Court held franchisor must prove franchisee himself knowingly filed false tax returns to prevail in action to termination franchise.

The PMPA's enforcement provisions are set forth in 15 U.S.C. §2805. This section expressly mandates that injunctive relief be entered, based on the facts of this case. Where a franchisor terminates a franchise in violation of PMPA's prohibitions, this Court

Shall grant such equitable relief as [it] determines is necessary to remedy the effects of any such failure to comply with the requirements of section 2802 or 2803 of this title, including declaratory judgment, mandatory or prohibitive injunctive relief, and the interim equitable relief. 15 U.S.C. §2805(b)(1)

The standards for granting a preliminary injunction under the PMPA are not the usual requirements of probability of success on the merits and irreparable harm. Rather, the PMPA sets forth a preliminary injunction standard that is more readily available, significantly less stringent and more lenient than the general equity standards. See *Shell Oil Co. v. K.E.M. Service, Inc.*, 69 F.3rd 531, 1995 WL 656491 (1st Cir. 1995); *Nassau Boulevard Shell Service Station, Inc. v. Shell Oil Co.*, 875 F.2d 359, 364 (2nd Cir. 1989); *Brownstein v. Arco Petroleum Products Company*, 604 F.Supp. 312, 314 (E.D. PA 1985). The court need only find that the franchisee's allegations show:

    (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

    (ii) there exists sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardships which would be imposed upon the franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. §2805(b)(2).

Since the overriding purpose of the PMPA is to protect the franchisee's reasonable expectation of continuing the franchise relationship, the PMPA must be given a liberal

11

construction consistent with its goal of protecting franchisees. *Hilo v. Exxon Corporation*, 997 F.2d 641 (9th Cir. 1993). Additionally, the PMPA is remedial legislation and, as such, merits a relatively expansive construction. *Smith & Co., Inc., v. Motiva Enterprises, LLC*, 269 F.3rd 70, 76 (1st Cir. 2001) citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988) and *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1221 (7th Cir. 1982).

## II. ARGUMENT

The facts of this case, in conjunction with applicable law, make it clear that injunctive relief must be immediately entered in this case to protect the Plaintiff. The PMPA creates two basic mechanisms to protect franchisees. *Rhodes v. Amoco Oil Company*, 143 F.3rd 1369, 1371 (10th Cir. 1998). First, the statute proscribes termination or nonrenewal of franchises except on specific grounds. Id. (citations omitted). This first facet of the PMPA's protection of the franchisee concerns whether the franchisor made the substantive decision for termination or non-renewal in good faith and the normal course of business…" Id. (citations omitted).

A. **Gulf has violated the PMPA.**

The facts clearly demonstrate that Gulf is seizing upon the opportunity to divest the Plaintiff of their

12

lease. Furthermore, Gulf's actions indicate a pattern whereby Gulf is attempting to achieve and declare a technical (and immaterial) default of the Lease.

Firstly, Gulf has failed to provide proper notice in accordance with the provisions of §2802(b)(2)(A) and §2802(b)(2)(B). Specifically, Gulf has terminated the franchise due to the alleged failure to repair or replace the Hoses on the dispensing equipment. While Gulf notified the Plaintiff of the problem in its July 2, 2003 letter, the facts indicate that the problems were remedied on July 7, 2003 by Tanknology. Plaintiff, in July, believed that it had exhibited good faith and complied with its contractual obligations and Gulf's requirements. As such, any problems found in the August 26, 2003 inspection (*almost two months after the original inspection*) by Florio necessarily had to consist of new problems with the nozzles or equipment, thereby necessitating a new notice under the provisions of the PMPA.

Secondly, the August 26, 2003 notice did not give Plaintiff a reasonable opportunity to cure the alleged defects. The facts (as exhibited by the July 2, letter followed by the July 7, action) clearly indicate that Plaintiff addressed these problems. Gulf's intended to

deliver and terminate the letter of September 5, 2003 prior to any reasonable opportunity to cure.

Thirdly, the facts indicate that there was no "failure" on the part of the Plaintiff to correct any alleged provision of the franchise agreement. The "failure" alleged by Gulf does not rise to the level required by the PMPA and cases thereunder. Plaintiff addressed all relative problems and issues in a timely manner. Furthermore, Plaintiff exhibited good faith in its efforts to carry out the terms and provisions of the franchise agreements.

Fourthly, it is clear that Gulf is motivated by pecuniary interest. It clearly viewed any "noncompliance" as immaterial. Otherwise, would Florio have waited two months to re-inspect the Premises? It is also well reported that Gulf is attempting to sell various locations to reduce its debt. Plaintiff believes that Gulf is using its power and resources (including employees) to harass and intimidate Plaintiff into vacating the location.

Lastly, questions of fact abound in this dispute. The Plaintiff has disputed the Defendants termination of the franchise and the notice requirements thereof. Further, there are material questions regarding Gulf's actions hereunder (relative to terminating a franchise for

14

torn hoses) and other franchisees (who may not have been terminated for the same actions. Gulf's intentions and plans for this particular station and location (and possible motives for improperly terminating Plaintiff's franchise) are also material questions which will be litigated.

B. **Plaintiff is entitled to a Temporary Restraining Order and a Preliminary Injunction.**

Plaintiff has shown in its Complaint, its Motion for Temporary Restraining Order and Preliminary Injunction and in this Memorandum that it has met the requirements set forth by the PMPA for equitable relief for protection from Gulf.

1. **Plaintiff is a franchisee whose franchise has been terminated.**

Plaintiff has shown, through the Affidavit of Ghattas Ajjouri, through the allegations in the Complaint, and in the exhibits attached thereto, that Plaintiff is a franchisee whose franchise has been terminated. By letter dated Septmeber 4, 2003 Gulf purportedly terminated the franchise.

2. **There exists a sufficiently serious question going to the merits to make such question a fair ground for litigation.**

15

Accordingly, there clearly exists a sufficiently serious question going to the merits of this litigation to make the question of whether a breach of the the Lease, the franchise, the franchise relationship occurred a fair ground and question for litigation.

3. **The balance of hardship clearly tips in Plaintiff's favor**.

As has been discussed in many federal cases, the PMPA was designed to benefit the small retailer and its standard for preliminary injunctions was intentionally drawn to facilitate the granting of injunctive relief. *Mobil Oil Corp. v. Vachon*, 580 F.Supp 153, 156 (D. Mass. 1983)(balance of hardship test favors franchisee) and *Barnes v. Gulf Oil.*, 824 F. 2d 300, 306 (4th Cir. 1987) citing *Greco v. Mobile Oil Corp.*, 597 F.Supp. 468, 473 (N.D. Ill. 1984)(balance invariably weighs heavily in franchisee's favor). These cases rely on the apparent fact that the franchisor has sufficient funds and power to withstand the entry of an injunction against it. However, the franchisee typically will be ruined if the injunction is not entered to protect it. Additionally, even though irreparable harm is not a requirement for the PMPA injunction, it is well settled law that the loss of a franchise is an irreparable harm to the franchisee. *Mobil*

*Oil Corp. v. Vachon*, 580 F.Supp 153, 155 (D. Mass. 1983), *Wojciechowski v. Amoco Oil Company*, 483 F. Supp. 109, 112 (E.D. Wis. 1980). Comparatively, any harm to the franchisor is merely slight, negligible or nonexistent.

The Plaintiff's sole business is that of the franchise. If Gulf is allowed to terminate the Franchise Agreement, the Plaintiff's business will be terminated with no chance to recuperate. On the contrary, if Gulf is prohibited from terminating the franchise until an adjudication of this matter, Gulf will not suffer at all. There will be no hardship on Gulf whatsoever if this Court grants the Plaintiff's prayer for relief. As a result, Plaintiff has shown this final element is in its favor as well.

All the required elements set forth by the PMPA are in favor of this Court granting Plaintiff a Temporary Restraining Order and a Preliminary Injunction (i) prohibiting Gulf from terminating the franchise relationship on or about December 14, 2003, pending this Court's determination of the issues at hand; and (ii) allowing Plaintiff to remain in business and conduct business at the location; (iii) ordering Defendant to reinstate Plaintiff's credit; and (iv) such other relief as this Court may deem meet, proper and just.

C.  **No Bond Is Required.**

Although the PMPA allows this court to require a bond when granting injunctions pursuant to its terms, there is no requirement that such a bond be posted. Further, there are numerous cases wherein no bond has been required for injunctions under the PMPA. See e.g. *Vachon*, 580 F.Supp. 153 (citing *Davy v. Murphy Oil Corp.*, 488 F.Supp. 1013 (W.D. Mich. 1980) and *Wesley v. Mobil Corp.*, 513 F.Supp. 1013 (E.D. PA 1981)).

Typically bonds are posted to guard against damages that might result from a wrongfully entered injunction. In this case, as more fully explained above, Gulf would suffer no economic hardship by temporarily refraining from terminating the franchise. Accordingly, no bond should be required in granting the requested Temporary Restraining Order and Preliminary Injunction.

## III. CONCLUSION

The Petroleum Marketing Practices Act is aimed at protecting franchisees. The aim of the PMPA would be furthered by entry of the Temporary Restraining Order and Preliminary Injunction requested by Plaintiff in its Motion. Plaintiff has met and exceeded each element set forth by the PMPA and is entitled as a matter of law to the equitable relief requested, that is, a Temporary

18

Restraining Order and Preliminary Injunction, without bond: (i) prohibiting Defendant Gulf from terminating the franchise relationship on or about December 14, 2003 pending this Court's determination of the issues at hand; and (ii) allowing Plaintiff to remain in business and conduct business at the location; (iii) ordering Defendant to reinstate credit terms for Plaintiff; (iv) allowing Plaintiff to continue in business during the pendency of the case; and (v) such other relief as this Court may deem mmet, proper, just or appropriate.

Respectfully Submitted,

Dated: December  2003

GHATTAS AND JOSEPH, INC.,
By Its Attorney

_____
Stephen M. Roberts, Esq.
BBO# 422540
Stephen M. Roberts, LLC
177 Worcester Street
Wellesley, MA 02481
(617) 235-9700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this Memorandum In Support of Motion for Restraining Order and Preliminary Injunction will be served upon Defendant, Cumberland Farms, Inc., by and through its Gulf Division, by serving Defendant (1) at its usual place of business, 777 Dedham Street, Canton, MA 02021 at the same time as the Complaint is served upon it and (2) at its Resident Agent, CT Corporation System, 101 Federal Street, Boston, MA 02110.

Date: 12/2/03

Stephen M. Roberts, Esq.